IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER RIEGE,

                       Plaintiff,

v.

ANDREW M. SAUL,

                       Defendant.

OPINION and ORDER

20-cv-499-jdp

---

      Plaintiff Jennifer Riege seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Riege not disabled within the meaning of the Social Security Act. Riege contends that remand is warranted because the administrative law judge (ALJ): (1) improperly weighed two medical opinions; (2) failed to consider Riege's use of a walker; (3) failed to explain the sit/stand limitation in the RFC; and (4) improperly considered Riege's subjective symptoms. The ALJ thoroughly described the medical record, but he committed several errors in evaluating evidence of the severity of Riege's impairments. I will remand the case for further proceedings.

ANALYSIS

      Riege applied for social security benefits alleging disability beginning on June 27, 2016. R. 14. After her application for disability benefits was denied, initially and on reconsideration, she requested a hearing before an ALJ. *Id*. The ALJ held the hearing in March 2019, and denied her claim in a written decision. R. 11–26. The ALJ found that Riege suffered from the following severe impairments: fibromyalgia/myofascial pain, thoracic spine dysfunction, lumbar spine dysfunction, degenerative joint disease of the left knee, osteoarthritis of both knees, and

obesity. R. 16. The ALJ determined that none of these impairments met or medically equaled the criteria for a listed disability. R. 18–19; 20 C.F.R. § 404. He ascribed to Riege the residual functional capacity (RFC) to perform light work with many additional environmental and physical restrictions. R. 19–20. Based on the testimony of a vocational expert (VE), the ALJ found that Riege could perform her past work as a data entry, records, or admitting clerk, and that she could perform additional representative jobs available in the economy. R. 24–26. The ALJ concluded that Riege was not disabled, and the Appeals Council denied her request for review. R. 1–6.

The court's role here is to determine whether the ALJ's decision is supported by substantial evidence, which means that the ALJ points to "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The substantial evidence standard is not high, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Riege gives four reasons why the ALJ's decision is not supported by substantial evidence; the court will address those arguments in the following sections.

**A.  Opinion evidence from Riege's physicians**

Riege contends that the ALJ improperly weighed the opinion evidence of two of her doctors: her treating physician, Michael Augustson, and a rheumatologist who saw Riege once, Virginia Wilson. Under the regulations in effect at the time of Riege's claim, the opinions of treating sources are entitled to controlling weight if they are supported by medical evidence and are consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527. Even

if the ALJ does not give a treating source opinion controlling weight, the ALJ must consider several factors when deciding what weight to give the opinion: the length, nature, and extent of the treatment relationship; the supportability of the medical opinion, its consistency with the record as a whole; whether the medical source has a specialty; and any other relevant factors. *Id*. The ALJ need not expressly address each factor, but the ALJ must provide a sound explanation of his conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

### 1. Augustson's opinion

Augustson, a primary care provider, began treating Riege in May 2016 and he saw her every few weeks. R. 469. He completed a physical residual functional capacity questionnaire in May 2017. R. 469–71. He listed Riege's diagnosis as fibromyalgia. Where the questionnaire asked for the clinical findings and objective signs in support of the diagnosis, he wrote two illegible words and "tenderness throughout." *Id.* Augustson's opinion was that Riege was severely limited. He concluded that Riege could sit and stand for only 15 minutes at a time and for less than two hours total during an eight-hour day; that Riege was "unable to work" regardless of whether she could sit or stand, or take breaks; that Riege could not lift ten pounds; that her legs should be occasionally elevated; that she required a cane while standing and walking; and that she would likely be absent from work more than four days per month. *Id*.

The ALJ said that he gave "little weight" to Augustson's opinion, although he actually rejected it entirely in a scant paragraph, saying Augustson's "conclusions are extreme and not supported by reference to objective medical evidence or explanation." R. 23. The ALJ said that "the issue of whether an individual is capable of working is reserved to the commissioner for determination." *Id.*

3

Riege contends that the ALJ should have given controlling weight to Augustson's opinion, and even if it were not entitled to controlling weight, the ALJ should have considered the opinion under the regulatory factors in 20 C.F.R. § 404.1527. Riege is correct. The ALJ dismissed Augustson's as extreme, apparently because it didn't match the opinions of the state medical consultants, or the ALJ's own conclusions. But Augustson's opinion squared with Augustson's subjective reports, which in turn are validated to some degree by objective medical evidence of her severe impairments. And the ALJ is correct that the ultimate determination of disability is for the Commissioner, but the form document on which Augustson recorded his opinions asked specifically for opinions about the workplace accommodations. Augustson did not merely fill in the check boxes, but provided handwritten responses that specific accommodations would not be adequate to allow Riege to work. These responses are not merely conclusory opinions that impinge on the authority of the Commissioner. Augustson's opinion is not beyond criticism, but as the opinion of a treating physician with a long history with Riege, it can be rejected entirely only after careful explanation, which the ALJ did not provide. Remand would be required on the basis of the ALJ's treatment of the Augustson opinion alone.

2. **Wilson's opinion**

Wilson, a rheumatologist, treated Riege once when she conducted a rheumatologic evaluation on July 15, 2016. R. 385–387. The visit report includes Wilson's assessment of Riege's pain symptoms, physical exam results, and a review of Riege's imaging. Wilson notes that at the end of the appointment, Riege asked her if she could return to work. Wilson wrote "I think this is fine," especially if her pain medications provided relief. R. 387.

The ALJ referred to Wilson as a treating source physician and gave some weight to her opinion that Riege could return to work. R. 24. He explained that even though Wilson's

4

statement was conclusory and not a function-by-function analysis, an in-depth discussion of Riege's condition preceded her conclusion, and her statement supported the limitations included in Riege's RFC. *Id.*

I agree with Riege that Wilson was not a treating source, which the regulations define as a provider who has "an ongoing treatment relationship" with a patient. 20 C.F.R. § 404.1527(a)(2). Wilson only saw Riege once. I also agree that it was unreasonable for the ALJ to credit Wilson's bottom line opinion that Riege was capable of returning to work, while the ALJ rejected Augustson's contrary opinion as a matter reserved to the Commissioner.

Riege's appointment with Wilson was just three weeks into her alleged disability. At the time, Riege had plans to return to work. So the ALJ could not reasonably view Wilson's opinion as one supported by an in-depth assessment of all the relevant evidence. Wilson merely told Riege, at that early point in her alleged disability and based on one appointment, that she could safely go to back to work, depending on how she felt. Wilson's discussion of Riege's condition in the visit notes, moreover, was consistent with Riege's subjective complaints about her pain and impairments.

On remand, the ALJ must reevaluate the opinions of both Augustson and Wilson.

**B. Riege's walker**

Riege contends that the ALJ erred by failing to consider her use of a walker in determining her RFC. The evidence showed that Riege used two assistive devices: a cane and a four-wheeled walker. In November 2017, an Advanced Practice Nurse Prescriber prescribed Riege a walker after Riege reported that she had been using a friend's walker and found it helpful, but that she had to return it and was having more difficulty walking. R. 712. At a March 2018 appointment with Augustson, Riege stated that she used her walker to walk more

than two blocks or to stand in one place for a long time. R. 936. Riege also attended her hearing with a walker. R. 49. She testified that it had been prescribed to her, her sister paid for it out of pocket, she had been using a walker for over a year, she used it outside the house whenever possible, and she used it for balance. R. 49–50.

The RFC included a provision for a cane, stating that Riege:

> may at times require the use of a single point hand-held assistive device (a cane) when ambulating on uneven terrain or for prolonged ambulation (defined as 25 feet or longer), but remains able to lift or carry up to the exertional requirements for light exertion with the opposite extremity.

R. 19. But the RFC did not include any provision for Riege's walker. The ALJ did not address Riege's need for a walker at all, apart from noting, in his description of her subjective symptoms, that she "testified that she used a walker and a cane for balance." R. 20.

The Commissioner contends that ALJ did not have to include a restriction for a walker in the RFC because the ALJ had discounted Riege's subjective complaints and because Riege did not offer medical evidence to show that her walker was "medically necessary." *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). But the Commissioner cannot rely on after-the-fact justifications that the ALJ himself did not provide. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010). Despite the evidence the Riege needed and used a walker, the ALJ failed to consider the issue at all. *See Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (generally discrediting a plaintiff's testimony without addressing her reliance on an assistive device failed to build the requisite "logical bridge" between the evidence and the ALJ's conclusions).

On remand, the ALJ must consider Riege's need for a walker.

## C. RFC's sit/stand limitation

One of the limitations in the RFC was that that Riege could perform light work "except she requires the option to sit or stand at will at the work station, but will not be off-task from work performance as a result." R. 19. The ALJ's hypothetical posed to the vocational expert included an "option to alternate positions at will at the work station between sitting and standing." R. 64. And the hypothetical, like the RFC, did not include any accommodation for being off task.

Riege contends that sit/stand limitation and the hypothetical are flawed because Riege could change positions only with great effort, requiring her to be off task during the transition. *See* R. 55 (Riege testimony); R. 937 and R. 1002 (Augustson treatment notes).

The Commissioner contends that any needed off-task time would be accommodated by the RFC's prohibition of fast-paced production or quota-driven work. Dkt. 18, at 27. The RFC included that Riege could do "no fast-paced production quota or rate (any production requirements should be goal oriented, such as based on a daily, weekly, or monthly quota rather than assembly line work or other similar work." R. 19–20. It's not at all clear that the prohibition against fast-paced production and quota work would address Riege's need to be off task. And, again, this is an after-the-fact explanation that the ALJ himself did not make.

On remand, the ALJ must reconsider whether the RFC must include an off-task limitation.

## D. Riege's subjective symptoms and daily activities

Riege's final argument is that the ALJ erred in assessing her subjective symptoms.

In assessing a claimant's subjective symptoms, an ALJ must consider whether a claimant's statements about their symptoms can "reasonably be accepted as consistent with

7

the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The regulations instruct the ALJ to consider several factors to evaluate how the claimant's symptoms limit her capacity for work, including her daily activities, severity of symptoms, aggravating factors, medications, treatment, and other relevant restrictions. 20 C.F.R. § 404.1529(c).

The ALJ's decision cited the 20 C.F.R. § 404.1529(a) regulatory standard, R. 20, but when he reviewed Riege's alleged symptoms, he concluded that Riege's statements about the intensity, persistence and limiting effects of her pain were "not entirely consistent with the medical evidence and other evidence in the record." R. 22. He also stated that the record "fail[ed] to fully substantiate the claimant's allegations of disabling symptoms." *Id.*

The Seventh Circuit has repeatedly criticized the boilerplate term "not entirely consistent with the medical evidence" because it implies a stricter standard of consistency than that in § 404.1529(a). *See, e.g., Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). But the ALJ's use of the misleading boilerplate is not reversible error "if the ALJ otherwise identifies information that justifies the credibility determination." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). A court may overturn an ALJ's weighing of subjective complaints finding only if it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

If the only flaw in the ALJ's opinion were the assessment of Riege's subjective symptoms in light of her daily activities, the court would conclude that the ALJ was not patently wrong. The ALJ might reasonably conclude, as he did here, that many of Riege's symptoms had been successfully treated. But the assessment of Riege's statements about her symptoms has to be viewed in the context of the other errors in the ALJ's opinion. I'll cite one telling example. The ALJ rejected both Riege's statements about her pain, and Augustson's opinion about the extent of her limitations. The ALJ acknowledged that Riege's fibromyalgia was a severe impairment.

8

Fibromyalgia is notoriously difficult to verify by means of objective evidence. But Augustson diagnosed her fibromyalgia with a trigger-point exam, a recognized diagnostic technique, which showed pain in 12 of 18 trigger points. The ALJ's cavalier rejection of Augustson's opinion undermines the ALJ's findings about Riege's reports of her own symptoms.

On remand, the ALJ will have to reassess Riege's statements about her pain, her daily activities, and the limiting effects of her severe impairments.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, commissioner of Social Security, denying plaintiff Jennifer Riege's application for disability benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered March 5, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge